
# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## SHAUNN GUMATAOTAO MANGLONA,
Defendant-Appellant.

Supreme Court Case No. CRA23-013
Superior Court Case No. CF0737-22

## OPINION

## Cite as: 2024 Guam 8

Appeal from the Superior Court of Guam
Argued and submitted on May 16, 2024
Hagåtña, Guam

Appearing for Defendant-Appellant
Peter C. Perez, *Esq.*
Law Office of Peter C. Perez
DNA Bldg.
238 Archbishop Flores St., Ste. 802
Hagåtña, GU 96910

Appearing for Respondent-Appellee
Nathan Tennyson, *Esq.* (argued)
Daniel Morris (briefed)
Assistant Attorneys General
Office of the Attorney General
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913



BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, J.:**

[1]     Defendant-Appellant Shaunn Gumataotao Manglona appeals a conviction of Advanced Stalking, a felony in the second degree.  Manglona argues that the undefined terms "maliciously," "repeatedly," and "in violation of a court order" within the stalking statute are unconstitutionally vague.[1]  Manglona also argues that there was insufficient evidence to convict on the element of acting "maliciously."  We conclude that the stalking statute is not unconstitutionally vague and that there is sufficient evidence to support a finding Manglona acted maliciously.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     Manglona was subject to an order of conditional release in a separate case that ordered him to stay away from the alleged victim, M.M.  The release order was issued on October 18, 2022.  Manglona was arrested and charged with advanced stalking for "repeatedly" and "maliciously" violating this order.

[3]     The first incident occurred the same evening the release order was issued; around 2:00 a.m., M.M. heard Manglona knocking on her bedroom window, calling her "babe."  Transcript ("Tr.") at 71–72 (Jury Trial, Day 1, Feb. 8, 2023).  Manglona tried opening the door and windows to the house to get in, but they were locked.  M.M. called the police, but Manglona left before the police arrived.

[4]     Manglona came to M.M.'s house again about two months later.  M.M. called Manglona's aunt to pick him up since he was under house arrest at the aunt's home.  Manglona spoke with M.M. for an hour, asking her to drop the case, before someone arrived to pick him up.  The third

---

[1] As we discuss below, contrary to Manglona's assertions, "violation of a court order" is not an element of advanced stalking.  *See* 9 GCA § 19.70(b) (as amended by Guam Pub. L. 31-009:3 (Mar. 9, 2011)).

incident occurred the next morning. M.M. was on the phone with Manglona's probation officer to report him showing up at her house the day before. Manglona knocked on the door, and their young daughter opened it, allowing him inside the house. M.M. gave the phone to Manglona, and his probation officer instructed him to leave "immediately," which he did. *Id.* at 77; Tr. at 30 (Jury Trial, Day 2, Feb. 9, 2023). The fourth incident occurred later the same day, in the evening. M.M. was returning home from running errands when she noticed her neighbor fixing his car outside. The neighbor signaled to M.M. to leave, and she understood that meant Manglona was there as well. Manglona was arrested after the final incident. He was charged with one count of Advanced Stalking as a second-degree felony.

[5]     The People relied primarily on the testimony of M.M. to show that Manglona acted willfully, repeatedly, and maliciously when he violated the court's protective order. After the People rested, defense counsel stated on the record that he would not be moving for a judgment of acquittal:

> Your Honor, this is normally my cue to move for a judgment of acquittal. However, I am familiar with the standards that no evidence at all, in the light most favorable to the Government, that there is no evidence that was proffered for a reasonable jury to consider. We concede that, based on the testimony of practically all the witnesses, there [are] questions of fact for the jury to decide whether or not this charge is sustainable. So given that, I am not making a motion for a judgment of acquittal.

Tr. at 40 (Jury Trial, Day 2).

[6]     Before closing arguments, during a hearing on proposed jury instructions, the trial court declared that it did not have definitions for "willfully, maliciously, or repeatedly." Tr. at 16 (Jury Trial, Day 3, Feb. 10, 2023). The People stated that they would not oppose including definitions, but defense counsel maintained that "willful is pretty basic and self-explanatory." *Id.* at 20. After the court noted there were no definitions of these terms provided in the statute, the parties agreed

that no definitions be provided. *Id.* at 20–21. The court noted that in the past, when the court has "received questions from the jury such as . . . what does willful mean when there's no statutory definition, . . . parties have agreed just to inform the jury that they are just to apply their standard knowledge of the term, as opposed to a legal definition." *Id.* at 20. The court offered to "wordsmith it if the question ever comes up again. And we'll try to prepare something in anticipation of that. And then we can discuss it if we do get a request." *Id.* at 22.

[7]     The court instructed the jury on the definition of advanced stalking: "A person is guilty of advanced stalking if he or she willfully, maliciously, and repeatedly follows or harasses another person where there is a temporary restraining order or an injunction, or both, or any other Court order in effect prohibiting the behavior against the same party." *Id.* at 106; *see also* Record on Appeal ("RA"), tab 43 at 50 (Jury Instrs., Feb. 22, 2023). Although the jury sent a note to the court asking several questions, it did not ask for the definition of any terms. After deliberating for less than four hours, the jury returned a unanimous guilty verdict on the charge of advanced stalking. Manglona was sentenced to five years' imprisonment, three of which were suspended. This appeal timely followed.

## II.  JURISDICTION

[8]     This court has jurisdiction over an appeal from a final judgment of the Superior Court of Guam. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-150 (2024)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10–.15(a) (2005).

## III.  STANDARD OF REVIEW

[9]     We review the constitutionality of a statute *de novo*. *People v. Shimizu*, 2017 Guam 11 ¶ 11.

**[10]**    When a defendant does not move for a judgment of acquittal at trial, we review the sufficiency of the evidence for plain error. *People v. Taisacan*, 2023 Guam 19 ¶ 12 (quoting *People v. Maysho*, 2005 Guam 4 ¶ 6). Under plain error review, "[w]e will not reverse unless (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *People v. Mendiola*, 2023 Guam 12 ¶ 16 (citation omitted). Although our usual review for the sufficiency of evidence is *de novo*, the same presumptions apply when reviewing an unpreserved challenge for plain error: "we view the evidence in the light most favorable to the government and ask whether the evidence—and any reasonable inferences to be drawn from it—would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Freeman*, 70 F.4th 1265, 1273 (10th Cir. 2023) (quoting *United States v. Gallegos*, 784 F.3d 1356, 1359 (10th Cir. 2015)).

### IV.  ANALYSIS

**A.  The Stalking Statute Is Not Unconstitutionally Vague as Applied to Manglona**

**[11]**    Manglona argues, "[T]he Advanced Stalking statute does not provide sufficiently definite warnings as to what is proscribed, when measured by common understanding and practices, and when read by persons of ordinary intelligence seeking to avoid its violation." Appellant's Br. at 18 (Feb. 13, 2024). He claims the statute "fails to prescribe minimal guidelines to govern law enforcement on the undefined offense elements (1) maliciously, (2) repeatedly, and (3) in violation of a court order." *Id.* at 23. Due to the lack of definitions, Manglona argues the advanced stalking statute is void for vagueness. *Id.* at 10–11, 15–16.

**[12]**    Manglona was convicted under Guam's stalking statute, which provides:

> (a) A person is guilty of simple stalking if he or she willfully, maliciously, and repeatedly, follows or harasses another person or who makes a credible threat

with intent to place that person or a member of his or her immediate family in fear of death or bodily injury.

(b) A person is guilty of advanced stalking if he or she violates Subsection (a) of this Section when there is a temporary restraining order or an injunction or both or any other court order in effect prohibiting the behavior described in that Subsection against the same party.

9 GCA § 19.70 (as amended by Guam Pub. L. 31-009:3 (Mar. 9, 2011)). The Legislature passed the statute in September 1993, joining the majority of jurisdictions in recognizing the law was "woefully lacking in the adequate protection of persons who are threatened by the menacing presence of another person." *See* P.L. 22-35:1 (Sept. 27, 1993); *see also* Christine B. Gregson, Comment, *California's Antistalking Statute: The Pivotal Role of Intent*, 28 Golden Gate U. L. Rev. 221, 243 n.143 (1998) (observing 49 states adopted anti-stalking laws between 1990 and 1993).

[13] California was the first state to pass an anti-stalking statute, doing so in 1990. Gregson, *supra*, at 221 (citing Cal. Penal Code § 646.9). Like many other jurisdictions that passed an anti-stalking statute before the publication of a model anti-stalking code, Guam patterned its statute after California's. *See* P.L. 22-35, Comm. Rep. on Bill 265 at 2; *cf.* Gregson, *supra*, at 221, 242–43 & nn.3, 143 (collecting anti-stalking statutes and explaining when each state passed their law). *Compare* 9 GCA § 19.70(a)–(b) (as added by P.L. 22-35:3), *with* Cal. Penal Code § 646.9(a)–(b) (as added by 1990 Cal. Legis. Serv. 1527 (West)). Any doubts about the source of Guam's stalking statute are answered by the legislative history of section 19.70: "Assistant Attorney General John Glang, a territorial prosecutor, appeared before the committee registering support for the measure with modifications. A former California prosecutor, Attorney Glang noted that Bill 265 is patterned after the constitutionally upheld California statute which was enacted in 1990." P.L. 22-35, Comm. Rep. on Bill 265 at 1–2.

**[14]**     Guam seems to have the distinction of being the only Model Penal Code jurisdiction that adopted an anti-stalking statute that prohibits "willful" and "malicious" conduct without defining either of the terms. *See, e.g.*, S.D. Codified Laws § 22-19A-1 ("No person may: (1) Willfully, maliciously, and repeatedly follow or harass another person[.]"); S.D. Codified Laws § 22-1-2 (defining malice along with the Model Penal Code's culpable mental states); *see also* Gregson, *supra*, at 221 n.3 (collecting statutes). Unlike Guam, California has generally not adopted the Model Penal Code and therefore does not subscribe to the MPC's hierarchy of culpable mental states. *See, e.g.*, *People v. Mikel*, No. 92-00114A, 1993 WL 470410, at *3 (D. Guam App. Div. Oct. 12, 1993) (discussing Guam's adoption of Model Penal Code and repeal of California-based law), *aff'd*, 34 F.3d 1073 (9th Cir. 1994); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 535 (Cal. 1999) ("California has not adopted the Model Penal Code."). Instead, California has codified the definition of the common law terms "willfully" and "maliciously" in its Penal Code. Cal. Penal Code § 7(b)(1), (4) (West 2024).[2] Thus, we are asked to determine whether the Legislature adopted a law that is unconstitutionally vague when it adopted California's anti-stalking statute without defining the terms that make up its *mens rea* element. We conclude that it did not.

### 1. The void for vagueness doctrine

**[15]**     "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *People v. Perez*, 1999 Guam 2 ¶ 7 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)), *overruled on other grounds by Shimizu*, 2017 Guam 11 ¶ 40. "The void for vagueness doctrine . . . is a long-standing principle in due process jurisprudence

---

[2] Although the Guam Penal Code contained a definitions section that mirrored California Penal Code section 7, it was repealed when Guam adopted the Model Penal Code's definition of culpable mental states. *Compare* Guam Penal Code § 7 (1970), *with* 9 GCA § 4.30 (2005).

which rests on the premise that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" *People v. Tfong*, 2021 Guam 13 ¶ 14 (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)). To determine whether a statute is void for vagueness, two inquiries are appropriate: first, whether the statute gives fair notice to those persons potentially subject to it, and second, whether the statute adequately guards against arbitrary and discriminatory enforcement practices. *Shimizu*, 2017 Guam 11 ¶ 28. Either of these two independent grounds may invalidate a criminal law for vagueness. *Id.*

[16] The U.S. Supreme Court has stated, "All are entitled to be informed as to what the State commands or forbids." *Lanzetta*, 306 U.S. at 453. "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). To provide fair notice, "a penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Tfong*, 2021 Guam 13 ¶ 15 (quoting *Shimizu*, 2017 Guam 11 ¶ 24); *see also Palmer v. City of Euclid*, 402 U.S. 544, 545 (1971) (per curiam). However, as the California Court of Appeal has explained:

> [R]easonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language. It will be upheld if its terms may be made reasonably certain by reference to other definable sources. [A] statute is sufficiently certain if it *employs words of long usage or with a common law meaning*, notwithstanding an element of degree in the definition as to which estimates might differ.

*Fletcher v. W. Nat'l Life Ins. Co.*, 89 Cal. Rptr. 78, 96 (Ct. App. 1970) (second alteration in original) (emphasis added) (citations and internal quotation marks omitted).

[17] Due process also mandates that criminal laws provide "'ascertainable standards of guilt' to avoid the danger of arbitrary and discriminatory enforcement of the law." *Tfong*, 2021 Guam 13

¶ 24 (quoting *Shimizu*, 2017 Guam 11 ¶ 36). "The absence of an ascertainable standard . . . gives police officers, prosecutors, and the triers of fact unlimited discretion to apply the law," *id.* (quoting *Shimizu*, 2017 Guam 11 ¶ 36), permitting "policemen, prosecutors, and juries to pursue their personal predilections," *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citation omitted); *see also Grayned*, 408 U.S. at 108–09 ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.").

[18]     As a matter of federal constitutional law, "if a law clearly prohibits a [criminal] defendant's conduct, the defendant cannot challenge, and a court cannot examine, whether the law may be vague for other hypothetical defendants." *United States v. Hosford*, 843 F.3d 161, 170 (4th Cir. 2016); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973) ("[E]ven if the outermost boundaries of [a statute] may be imprecise, any such uncertainty has little relevance . . . where [a defendant's] conduct falls squarely within the 'hard core' of the statute's proscriptions . . . ."). As the U.S. Supreme Court has explained:

> "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague "'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' Such a provision simply has *no* core."

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.7 (1982) (alteration in original) (first quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975); then quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974); and then quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

[19] When deciding whether a statute is unconstitutionally vague, courts apply the traditional rules of statutory construction, beginning with the plain language of the statute. *E.g.*, *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 27. State and federal courts widely agree that "[a] statute is not necessarily void for vagueness simply because it may be ambiguous or open to two constructions." *E.g.*, *Mumad v. Garland*, 11 F.4th 834, 838 (8th Cir. 2021) (alteration in original) (quoting *Williams v. Brewer*, 442 F.2d 657, 660 (8th Cir. 1971)); *In re J.*, 2022 ME 34, ¶ 22, 276 A.3d 510, 518 ("[N]ot every ambiguity, uncertainty or imprecision of language in a statutory pattern is unconstitutional, and a statute will withstand a vagueness challenge if any reasonable construction will support it." (alteration in original) (quoting *Beauchene v. State*, 2017 ME 153, ¶ 15, 167 A.3d 569)); *Curtis v. City of Hollywood*, 379 So. 3d 1185, 1189 (Fla. Dist. Ct. App. 2024) ("Vagueness and ambiguity are distinct legal concepts, with different definitions. 'A statute is normally regarded as "ambiguous" when its language may permit two or more outcomes.' '[A statute] is "vague" when it does not clearly announce any required outcome.'" (alteration in original) (quoting *Hess v. Walton*, 898 So. 2d 1046, 1049 (Fla. Dist. Ct. App. 2005))).

[20] The D.C. Circuit has explained that "a statute's vagueness is either susceptible to judicial construction or is void for vagueness based on the application of traditional rules for statutory interpretation. *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017). "'Only if no construction can save the Act from this claim of unconstitutionality are we willing to' strike the statute." *Id.* (quoting *Screws v. United States*, 325 U.S. 91, 100 (1945)). However, courts are barred from retroactively "applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Councilman*, 418 F.3d 67, 84 (1st Cir. 2005) (en banc) (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)); *see also United States v. Salisbury*, 983 F.2d 1369, 1380 (6th Cir. 1993)

("Where . . . a vague statute is so indefinitely defined that a reasonable defendant, at the time she was charged, could not reasonably foresee a future judicial construction proscribing her conduct, we believe it is inappropriate for a court to attempt to cure the defect and retroactively apply the construction to conduct which occurred prior to its holding.").

### 2. The term "maliciously" is not vague

[21]     Manglona essentially argues that an ordinary person does not have fair notice of what conduct the stalking statute forbids because "maliciously" is susceptible to multiple definitions. He states these definitions include: "1. The intent, without justification or excuse, to commit a wrongful act.  2. Reckless disregard for [sic] of the law or of a person's legal rights.  3. Ill will; wickedness of heart."  Appellant's Br. at 28 (quoting *Malice*, *Black's Law Dictionary* (9th ed. 2009)).  Manglona rhetorically asks whether, "when measured by common understanding and practices, and when considered by persons of ordinary intelligence," the statute provided fair warning his conduct was criminalized by the statute; he answers, "[I]t is at least vague as to whether [his actions] constituted malicious conduct." *Id.* at 18–19.  But this is not vagueness; it is merely ambiguity.

[22]     We agree with the Florida District Court of Appeal that "[v]agueness and ambiguity are distinct legal concepts, with different definitions." *Curtis*, 379 So. 3d at 1189.  A statute is ambiguous if its terms are susceptible to two or more reasonable interpretations. *In re Est. of Leon Guerrero*, 2023 Guam 10 ¶ 45.  But a statute is vague only if "no standard of conduct is specified at all." *Hoffman Ests.*, 455 U.S. at 495 n.7 (quoting *Coates*, 402 U.S. at 614).  Simply because the term "maliciously" may be susceptible to multiple interpretations does not render the stalking statute void for vagueness.  Applying our traditional rules of statutory construction, we can construct the term "maliciously" to avoid any ambiguity—let alone vagueness.

**[23]**    "[W]hen a legislature adopts a statute that is identical or similar to one in effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the construction placed on the statute by the originating jurisdiction." *In re Est. of Leon Guerrero*, 2023 Guam 10 ¶ 35 (quoting *Sumitomo Constr. Co. v. Zhong Ye, Inc.*, 1997 Guam 8 ¶ 7).  Furthermore, "[t]erms of art—words that carry an accepted or specialized meaning at common law—are to be construed in light of their accepted technical meaning unless the legislature has indicated otherwise." *People v. Hosei*, 2023 Guam 22 ¶ 65 (quoting *People v. Tennessen*, 2010 Guam 12 ¶ 10).  Thus, because the Legislature adopted California's stalking statute, it is presumed to have adopted California's construction of the term "maliciously."  And because the term also carries a specialized meaning at common law, *see, e.g.*, *United States v. Kelly*, 676 F.3d 912, 917 (9th Cir. 2012) ("[T]he term 'maliciously' had a particular meaning at common law."), it should be construed in light of its accepted meaning, *see Hosei*, 2023 Guam 22 ¶ 65.

**[24]**    Section 7 of the California Penal Code defines the term "maliciously" to "import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law."  Cal. Penal Code § 7(b)(4).  There are multiple common law definitions of malice, which vary by jurisdiction and context.  *United States v. Gray*, 780 F.3d 458, 467 n.10 (1st Cir. 2015).  However, malice is generally defined as "1. The intent, without justification or excuse, to commit a wrongful act.  2. Reckless disregard of the law or of a person's legal rights.  3. Ill will; wickedness of heart.  *Malice*, *Black's Law Dictionary* (9th ed. 2009); *People v. Rogers*, 979 N.W.2d 747, 757 (Mich. Ct. App. 2021).  We hold that the proper construction to be placed on the term "maliciously" in the stalking statute is a wish to vex, annoy, or injure, or an intent to do a wrongful act.  This is consistent with both California law and the common law.  *See People v. Uecker*, 91 Cal. Rptr. 3d 355, 365 n.8 (Ct. App. 2009); *Commonwealth v. Lehan*, 176

N.E.3d 1016, 1023–24 (Mass. App. Ct. 2021) (applying common law definition of malice in context of stalking statute, holding that "'[t]he concept of malice . . . need not include the element of hatred, spite, grudge, or ill will,' but rather only requires that the acts were 'intentional and without justification or mitigation.'" (alterations in original) (quoting *Commonwealth v. O'Neil*, 853 N.E.2d 576 (Mass. App. Ct. 2006))).

[25]    This is not a novel construction of the term "maliciously," and a defendant could reasonably foresee a future judicial construction proscribing his conduct. *See Councilman*, 418 F.3d at 84; *Salisbury*, 983 F.2d at 1380. California courts have long held that the word 'malice' is not unconstitutionally vague because it has a well-established meaning. *Fletcher*, 89 Cal. Rptr. at 96. In *People v. McClelland*, 49 Cal. Rptr. 2d 587, 591 (Ct. App. 1996), the California Court of Appeal observed that a defendant could not argue in good faith that the language of the statute criminalizing "willfully, maliciously, and repeatedly" harassing another person was unconstitutionally vague in part because the term "maliciously" had "been part of the Penal Code lexicon since 1872."

[26]    The definition of the term "maliciously" is sufficiently certain because it is a word of long usage with a common law meaning, "notwithstanding an element of degree in the definition as to which estimates might differ." *See Fletcher*, 89 Cal. Rptr. at 96 (quoting *Lorenson v. Superior Court*, 216 P.2d 859, 866 (Cal. 1950)). We agree with the California courts that a defendant cannot reasonably contend the term "maliciously" in subsection (a) of the stalking statute is vague. A person does not have to speculate on the type of "malicious" behavior that the stalking statute criminalizes; it prohibits willfully, repeatedly harassing another person—either with "a wish to vex, annoy, or injure" or an "intent to do a wrongful act." *See* Cal. Penal Code § 7; *Lanzetta*, 306 U.S. at 453 ("No one may be required at peril of life, liberty or property to speculate as to the

meaning of penal statutes.").  The stalking statute is not doomed by uncertainty about what type of malicious conduct is covered and what is not.

[27]    We conclude the stalking statute "clearly prohibit[ed]" Manglona's conduct, and he cannot challenge "whether the law may be vague for other hypothetical defendants."  *United States v. Hasson*, 26 F.4th 610, 616–17 (4th Cir. 2022) (quoting *Hosford*, 843 F.3d at 170).  The statute required Manglona to conform his conduct to what was perhaps "an imprecise but comprehensible normative standard," but this is not a case where "no standard of conduct [wa]s specified at all." *See Hoffman Ests*, 455 U.S. at 495 n.7 (quoting *Coates*, 402 U.S. at 614).  The stalking statute provided adequate notice to Manglona that his particular conduct was proscribed.  *See United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013).  Manglona was on actual notice that his repeated visits to M.M.'s home were prohibited.  Manglona's probation officer correctly told him that he could not be at M.M.'s home—while Manglona was physically present in her home. Despite this warning, Manglona returned to M.M.'s home mere hours later.  Similarly, Manglona cannot maintain that the alleged vagueness in the law resulted in it being applied arbitrarily to him. For example, he was violating the law while on speaker phone with his probation officer.  And it was not until Manglona returned to M.M.'s home for a fourth time—after being warned by his probation officer not to return—that he was eventually arrested.  Nothing about the enforcement of the stalking statute against Manglona can be characterized as "arbitrary."

[28]    As used in the stalking statute, the term "maliciously" is not vague as applied to Manglona.

### 3. Subsection (b) of 9 GCA § 19.70 is not unconstitutionally vague as applied to Manglona

[29]    Manglona also argues the phrase "in violation of a court order" is vague "in its failure to define: (i) what constitutes a violation of a court order, (ii) who determines whether a violation occurred, the order issuing Judge, or another trier of fact, and (iii) is a prior adjudication of

violation required or not required, and if so, when." Appellant's Br. at 22. However, we note from the outset that the phrase "in violation of a court order" does not appear in the stalking statute.[3] Instead, the statute states: "A person is guilty of advanced stalking if he or she violates Subsection (a) of this Section when there is a temporary restraining order or an injunction or both or any other court order in effect prohibiting the behavior described in that Subsection against the same party." 9 GCA § 19.70(b).

[30] For a statute to provide fair notice, its terms must allow an ordinary person to understand what conduct the statute prohibits. *Tfong*, 2021 Guam 13 ¶ 15. "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267.

[31] Contrary to Manglona's arguments, to commit advanced stalking, a defendant need not be held in contempt or otherwise adjudicated as having violated a court order. Violation of a court order is its own offense. 9 GCA § 30.40 (as amended by P.L. 32-017:3 (Apr. 11, 2013)). Instead, the focus is on the defendant's behavior and whether there was an order in place prohibiting that behavior. We find persuasive the California Court of Appeal's explanation of the interplay of these two subsections:

> Applying these principles, it is true that subdivisions (a) and (b) are to be read together. However, it is not the language of the subdivision (a) and the language of the restraining order which must be harmonized, it is that defendant's *behavior* must have violated both subdivision (a) and the order. If the defendant's conduct constitutes repeated following or harassment and defendant has made a credible threat, then defendant has violated subdivision (a). If the same conduct is also prohibited by an existing restraining order against the defendant, then the defendant has violated subdivision (b). Thus, subdivision (b) serves the manifest legislative purpose of providing enhanced punishment to those stalkers who have been ordered to refrain from such conduct in civil proceedings, and, hence, have

---

[3] The phrase was used in a jury instruction and in the amended indictment. RA, tab 43 at 53 (Jury Instrs., Feb. 22, 2023); RA, tab 37 at 1 (Am. Indictment, Feb. 9, 2023). However, Manglona makes no effort to explain what effect, if any, a charging document or jury instruction has on a defendant's claim that a statute is void vagueness.

> been warned that their behavior is unacceptable. We conclude subdivision (b) adequately informed defendant of the conduct which was proscribed.

*McClelland*, 49 Cal. Rptr. 2d at 592 (citation omitted). Although Guam's statute has been modified slightly from California to require harassment *or* a credible threat (but not necessarily both), the reasoning about the interplay between the two subsections remains applicable. The focus is on the defendant's behavior; the jury is asked to determine whether his behavior violated subsection (a) and whether there was a court order in effect that prohibited that behavior.

[32]    Manglona does not dispute he was subject to an order of conditional release which required him to stay away from M.M. Appellant's Br. at 22. Nor could he, as the order bears his signature below the declaration, "I have received a copy of this order and I understand that a violation of this order is a Contempt of Court and shall cause me to be arrested and be subject to possible further criminal charges and/or revocation of my pre-trial release." People's Ex. 2 (Order of Conditional Release for CF0648-22, Oct. 18, 2022) (admitted into evidence at Tr. at 33–35 (Jury Trial, Day 1)); *see also* Exs. Admitted – Chain of Custody (Feb. 22, 2023). Subsection (b) provides fair notice to individuals because individuals are not forced to speculate about whether a court order prohibiting harassing behavior against a person is in effect. As illustrated by this case, such orders are not entered secretly; the persons to whom they are addressed are put on actual notice of the unacceptable behavior the order enjoins.

[33]    Manglona's arguments about arbitrary enforcement of subsection (b) also fail for similar reasons. He claims that the statute fails to provide minimal guidelines to law enforcement because the statute is vague regarding "[w]ho determines whether a person is [sic] committed the conduct in violation of a court order: the police, the order issuing judge, or someone else, and if so, when?" Appellant's Br. at 23. This argument ignores the actual text of subsection (b). "Violation of a court order" is not an element of advanced stalking. If a finder of facts determines that a defendant

is guilty of simple stalking, the only inquiry under subsection (b) is whether there was a court order "in effect prohibiting the behavior . . . against the same party."  9 GCA § 19.70(b).  Manglona concedes that "it is undisputed that [he] was subject to a Conditional Order of Release that required him to stay away from and have no contact with, and to not harass [M.M.]."  Appellant's Br. at 22. But contrary to his arguments, the fact that "the court never heard the violation reports, he was never adjudicated to have violated the Order, and there was no action to revoke his release," *id.*, is irrelevant.  Subsection (b) created no greater risk for arbitrary and discriminatory enforcement against Manglona than did the court order of protection it contemplated.  Manglona cannot show that subsection (b) was vague as applied to his conduct.  It provided him fair notice, and it was not applied arbitrarily.

### 4. The term "repeatedly" is not unconstitutionally vague as applied to Manglona

[34]     Manglona argues that because the stalking statute does not define "repeatedly" and "because the court did not instruct the jury on the definition of repeatedly, the danger exists that Manglona's jurors, while presumably possessing common intelligence, might have guessed at its meaning and differed as to its application in their deliberations and in their decision to convict him."  Appellant's Reply Br. at 8 (Mar. 28, 2024).  The People argue the term "repeatedly" does not need a statutory definition and that its common understanding can be used.  Appellee's Br. at 13–14 (Mar. 14, 2024).

[35]     The U.S. Supreme Court has held that when a statute is attacked as vague, "[i]mpossible standards of specificity are not required.  The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."  *Jordan v. De George*, 341 U.S. 223, 231–32 (1951) (citations omitted).  The vagueness doctrine "does not preclude the use of ordinary terms to express ideas which find adequate

interpretation in common usage and understanding." *Budd v. Madigan*, 418 F.2d 1032, 1035 (9th Cir. 1969) (citing *Sproles v. Binford*, 286 U.S. 374, 393 (1932)). "Mathematical precision is not required in legislation. Although there may be issues of interpretation regarding the meaning of a statute, that in itself does not give rise to a finding of unconstitutional vagueness." *Farkas v. Miller*, 151 F.3d 900, 905–06 (8th Cir. 1998) (citing *Grayned*, 408 U.S. at 110). As the Fourth Circuit has observed:

> [W]e cannot . . . throw[] up our hands and declar[e] a statute vague simply because it does not include the most elaborate or the most specific definitions possible. The test for vagueness "is necessarily a practical rather than hypertechnical one," and when a statute fails to provide an explicit definition, we may resort to ordinary meaning and common sense . . . ."

*United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012) (quoting *United States v. Biocic*, 928 F.2d 112, 114 (4th Cir. 1991)). This issue has been so thoroughly litigated across the United States that over twenty years ago, the Supreme Court of Kansas observed that "the overwhelming majority of other jurisdictions" have held that "repeated or repeatedly is a word of common understanding so that its meaning is not vague. It simply means that the following or harassment must have occurred more than one time." *State v. Rucker*, 987 P.2d 1080, 1093 (Kan. 1999); *see also Budd*, 418 F.2d at 1035 (holding criminal statute not vague merely because it "uses ordinary terms"); *Farkas*, 151 F.3d at 905–06 ("Mathematical precision is not required in legislation. Although there may be issues of interpretation regarding the meaning of a statute, that in itself does not give rise to a finding of unconstitutional vagueness." (citation omitted)).

[36] Manglona asks us to ignore this overwhelming weight of persuasive authority, essentially throwing up our hands and declaring the stalking statute vague because it used the ordinary term "repeatedly" without including a mathematical definition. We decline to do so. As the California Court of Appeal has observed *in People v. Heilman*, "[t]here is nothing mysterious or ambiguous

about the term "repeatedly" to lead an actor to reasonably believe he will not be subject to the penalty under the statute if he engages in willful, malicious following [or harassment] on more than one occasion." 30 Cal. Rptr. 2d 422, 427 (Ct. App. 1994).

[37]     Manglona does not dispute he showed up at M.M.'s home four times while under an order to stay away from her. *See* Appellant's Br. at 3–6. There is nothing about the term "repeatedly" that would lead Manglona to reasonably believe he would not be subject to the penalty under the stalking statute if he engaged in willful, malicious harassment more than once—let alone four times. As applied to Manglona, the term "repeatedly" conveyed a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *See Jordan*, 341 U.S. at 231–32.

[38]     We also agree with the *Heilman* court that "'repeatedly' as used in this statute is not so vague as to create the danger of arbitrary and discriminatory enforcement of the law." Cal. Rptr. 2d at 427. The requirement that the behavior occur "repeatedly" lowers the risk of arbitrary enforcement because not until a perpetrator harasses a victim more than once does the conduct rise to a criminal level. *See id.* "[T]he commonsense term 'repeatedly' when read in light of the entire statute is not unconstitutionally vague." *Id.* at 428. Once a person has willfully and maliciously harassed another person more than one time, "the crime has been consummated, and there is no speculation on law enforcement's part to encourage arbitrary and discriminatory enforcement." *Tfong*, 2021 Guam 13 ¶ 26. The term "repeatedly" is not vague as applied to Manglona.

## B.  There Is Sufficient Evidence on the Essential Element of Acting "Maliciously"

[39]     Finally, Manglona argues that even if the stalking statute is constitutional, there was insufficient evidence to convict him on the element of acting maliciously. Appellant's Br. at 24. The standard of review for sufficiency claims depends on whether trial counsel moved for a

judgment of acquittal. *Taisacan*, 2023 Guam 19 ¶ 12; *Maysho*, 2005 Guam 4 ¶ 6. Because Manglona's trial counsel did not move for a judgment of acquittal in the Superior Court, we review the sufficiency of evidence supporting his conviction for plain error. *Maysho*, 2005 Guam 4 ¶ 6. Under the plain error standard, Manglona bears the burden of showing an error, obvious under current law, that affected his substantial rights. *People v. Bosi*, 2022 Guam 15 ¶ 47. Manglona "also must show that not reversing would lead to a miscarriage of justice [or pose a] threat to judicial integrity." *People v. Finik*, 2017 Guam 21 ¶ 33 (quoting *People v. Quitugua*, 2009 Guam 10 ¶ 43 n.9). Like any sufficiency challenge, "this court is 'concerned with the mere existence or nonexistence of evidence, not its weight,'" and we "consider the evidence presented at trial in the light most favorable to the prosecution." *People v. Riosen*, 2023 Guam 23 ¶¶ 28–29 (first quoting *People v. Perez*, 2021 Guam 18 ¶ 28; and then quoting *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010)).

[40]     Manglona argues there is insufficient evidence to support his conviction on the essential element of acting "maliciously" because "[t]here was no demonstrated intent to harm, to commit injury, and no manifestation of wickedness or evil intentions. Instead, the trial evidence demonstrates that Manglona did not act maliciously. Manglona missed, was concerned about, and was checking on his children, and asked [M.M.] to dismiss the family violence case." Appellant's Br. at 32–33. He also claims that the jury could not have properly considered the malice element because "there was no instruction, the instructions given were insufficient to instruct the jury on what 'maliciously' meant and how they were to apply the facts to the unstated law, and the trial court itself was unclear about the legal definition or standard for 'maliciously.'" *Id.* at 33. We disagree.

[41] The evidence submitted in this case includes testimony by the victim M.M., Manglona's probation officer, and the arresting officer. The jury also viewed admitted evidence of Manglona's file from the family violence case, the order of conditional release that included the stay away/no contact order, and four photographs of M.M.'s bruise that precipitated the family violence case and stay away order. Tr. at 66–70 (Jury Trial, Day 1).

[42] M.M. testified that the police visited Manglona's house for an unrelated incident, when they noticed a bruise on her. *Id.* at 55–56. When asked about the bruise, M.M. stated that Manglona had been abusing her for the past year. *See id.* at 53–56, 70. Manglona was issued a stay away order, and he was to have no contact with M.M. as a condition of his release from custody. *Id.* at 71. Despite this, M.M. testified that Manglona went to her house on the same evening he was released from custody. *Id.* at 71–72. M.M. testified that Manglona was at her house around 2:00 a.m. on the evening Manglona was released, trying to open the windows or doors. *Id.* at 72–73. M.M. testified she was shaking and scared when she heard him outside, and she called the police, but Manglona left before the police arrived. *Id.* at 72–74.

[43] M.M. also testified about three other incidents when Manglona appeared at her house. During the second incident, Manglona spent an hour asking M.M. to drop the case against him by writing a letter to the judge. *Id.* at 75–76; *see also* Appellant's Br. at 33 (conceding Manglona asked M.M. to drop the case). After that was unsuccessful, M.M. testified, Manglona came back to her house the next day, violating the stay away/no contact order for a third time. Tr. at 77 (Jury Trial, Day 1). This time, Manglona entered the house before he was confronted by M.M., who was on the phone reporting Manglona's behavior the day before to his probation officer. *Id.*; Tr. at 30 (Jury Trial, Day 2). Manglona's probation officer also testified, corroborating the account that, incredibly, Manglona appeared at M.M.'s house while she was reporting him for showing up

at the house the night before. Tr. at 30 (Jury Trial, Day 2). The probation officer testified that she told Manglona to leave "immediately." *Id.* The fourth incident M.M. testified about was from later the same evening, when M.M. believed Manglona had returned to her home based on a signal from her neighbor as she was driving up. *See* Tr. at 78–79 (Jury Trial, Day 1). M.M. left to report Manglona to the police, and he was eventually arrested. *Id.* at 80.

[44]     In determining whether there is sufficient evidence to sustain Manglona's conviction, our "review is limited to whether there is sufficient evidence to support each element of the crime . . . for which the defendant is convicted." *People v. Taisacan*, 2018 Guam 23 ¶ 18. Because Manglona challenges the People's evidence on only the acting "maliciously" element, we review this evidence "in the light most favorable to the People and determine whether any rational trier of fact could have found" whether Manglona acted maliciously "beyond a reasonable doubt." *People v. Song*, 2021 Guam 14 ¶ 18 (quoting *People v. Wia*, 2020 Guam 17 ¶ 35). Our sufficiency-of-the-evidence test "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Riosen*, 2023 Guam 23 ¶ 29 (quoting *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam)). "[W]hen 'faced with a record of historical facts that supports conflicting inferences' a reviewing court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* ¶ 30 (quoting *Nevils*, 598 F.3d at 1164).

[45]     The stalking statute criminalizes acts that violate the statute when committed either with "a wish to vex, annoy, or injure another person" or "an intent to do a wrongful act." *See, e.g.*, *People v. Garcia*, No. B231936, 2012 WL 733897, at *3 (Cal. Ct. App. Mar. 6, 2012) (rejecting

defendant's argument that prosecution must prove both to satisfy stalking statute) (unpublished).[4] We conclude that although the prosecution need only present sufficient evidence of either of these mental states to sustain a conviction, there was sufficient evidence of both. *Cf. People v. Flores*, 2004 Guam 18 ¶ 21 ("It is clear that section 25.25 was intended to be read in the disjunctive sense, allowing evidence of force alone as sufficient to convict under section 25.25.").

[46]     There is sufficient evidence that Manglona acted with a wish to vex, annoy, or injure. Manglona argues that the evidence shows he acted with no ill will towards M.M., but rather, "Manglona missed, was concerned about, and was checking on his children, and asked [M.M.] to dismiss the family violence case." Appellant's Br. at 33. That a conflicting inference might be drawn from the evidence does not render the evidence insufficient. *See Riosen*, 2023 Guam 23 ¶ 30 ("It is not within the purview of this Court to reverse the jury's verdict simply because a 'more reasonable' inference could be made. Rather, the fact that a conflicting inference can be made is controlling." (quoting *Myers v. State*, 27 N.E.3d 1069, 1078 (Ind. 2015))). The jury could have made other reasonable inferences from Manglona's actions. For instance, the testimony that he tried to contact M.M. at two in the morning right after being released from custody for allegedly committing domestic violence against M.M. also gives rise to a potential inference that he was acting with a wish to vex, annoy, or injure. *See* Tr. at 71–73, 81 (Jury Trial, Day 1) ("After violating four times, I do not know what's in his head, what he's trying to do. And then, again, I do not have any family here to run to or ask for help. I -- I'm just too scared when I think of the worst thing to happen."). The jury was presented with ample evidence from which a rational trier of fact could have found Manglona acted with a wish to vex, annoy, or injure M.M.

---

[4] While we generally refrain from citing unpublished decisions, there are only a handful of California stalking cases, and most of them are unpublished. *Cf. People v. Hosei*, 2023 Guam 22 ¶ 31 n.2 ("Although a majority of Michigan Court of Appeals decisions [interpreting their criminal sexual conduct statutes] are unpublished, we rely on unpublished opinions to the extent their reasoned analysis is persuasive in the case before us." (citation omitted)).

**[47]**     There is also sufficient evidence that Manglona acted with the intent to do a wrongful act. Manglona does not dispute he was under a court order to stay away from M.M. and her home and to have no contact with her.  *See* Appellant's Br. at 3, 22.  But even on appeal, he concedes that he went to M.M.'s house and talked to her about dropping the family violence charges being brought against him.  *See* Appellant's Br. at 33.  This seems to be a concession that there is evidence that Manglona intended to do a wrongful act—he intentionally went to M.M.'s home to talk to her despite knowing he had been ordered not to do either.  When Manglona spoke with his probation officer on M.M.'s phone at M.M.'s home, he was put on notice why it was wrongful for Manglona to be contacting M.M. at her home.  *See* Tr. at 77–78 (Jury Trial, Day 1); Tr. at 30 (Jury Trial, Day 2).  Yet despite this conversation, Manglona returned to M.M.'s home mere hours later.  *See* Tr. at 78–79 (Jury Trial, Day 1).  The People presented sufficient evidence of Manglona intending to do a wrongful act.

**[48]**     The People presented evidence that Manglona repeatedly went to M.M.'s house while he was under an order to stay away.  The People's evidence is sufficient to show that Manglona did this with both ill will and an intent to commit a wrongful act.  There is sufficient evidence to sustain Manglona's conviction for "maliciously" harassing M.M.

## V.  CONCLUSION

**[49]**     The stalking statute is not unconstitutionally vague as applied to Manglona.  Using our traditional rules of statutory interpretation, we conclude the proper construction of the term "maliciously" as used in the statute is "a wish to vex, annoy, or injure" or an "intent to do a wrongful act."  The term "maliciously" is not vague as applied to Manglona's conduct.  Manglona cannot show that 9 GCA § 19.70(b) is vague as applied to the facts; there was a court order in place that prohibited the behavior.  The term "repeatedly" is not unconstitutionally vague as

applied to Manglona's conduct because the common meaning of the term is more than once. Finally, there is sufficient evidence to support Manglona's conviction on the element of acting "maliciously." Therefore, we **AFFIRM** Manglona's conviction under the stalking statute.


|                          |                          |
| :----------------------: | :----------------------: |
| /s/                      | /s/                      |
| F. PHILIP CARBULLIDO     | KATHERINE A. MARAMAN     |
| Associate Justice        | Associate Justice        |


/s/
ROBERT J. TORRES
Chief Justice